IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA RUTH ERICKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 10 CV 965 |
| v. | ) | |
| | ) | Hon. Ronald A. Guzman |
| **DEUTSCHE BANK SECURITIES INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff, Patricia Ruth Erickson ("Plaintiff" or "Ms. Erickson"), through counsel, and pursuant to Federal Rule of Civil Procedure 37, moves to compel Defendant, Deutsche Bank Securities, Inc. ("Defendant" or "DBSI"), to respond to Plaintiff's discovery requests. In support thereof Plaintiff states as follows:

### I. COMPLIANCE WITH LOCAL RULE 37.2

Upon reviewing discovery, Plaintiff identified various deficiencies in Defendant's responses. (Plaintiff's First Set of Document Requests to Defendant is attached hereto as Exhibit A, Plaintiff's First Set of Interrogatories to Defendant is attached hereto as Exhibit B, Defendant's Responses and Objections to Plaintiff's First Set of Document Requests is attached hereto as Exhibit C, and Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories is attached hereto as Exhibit D.) Pursuant to Local Rule 37.2, counsel for the parties held a lengthy conference call on August 23, 2010 to address discovery disputes, some of which have been resolved. Subsequently, counsel for Ms. Erickson provided DBSI's counsel with a draft of the instant Motion to provide counsel with an opportunity to mitigate the outstanding issues. Despite these efforts, the parties were not able to adequately resolve all issues and this Motion follows.

## II.     RELEVANT FACTS

Plaintiff, Patricia Erickson, was hired as a managing director of Private Wealth Management ("PWM") by DBSI in April of 2007. At the time she was hired, she signed an employment agreement that DBSI told her was a standard agreement for managing directors. The argument it references various company-wide policies. (Compl. ¶ 19). Upon joining DBSI, Ms. Erickson transitioned over a substantial book of business she had developed while working for Merrill Lynch. That book of business was expected to and ultimately did generate millions of dollars of revenue for DBSI. At the time of her hire, Ms. Erickson was promised that she would receive compensation and other benefits for the revenues her business generated for DBSI. Unfortunately, it soon became clear that DBSI was not paying Ms. Erickson what it promised when it lured her away from Merrill Lynch. Making matters worse, DBSI was not compensating Ms. Erickson in a manner consistent with other managing directors despite assuring her that her employment agreement was the standard agreement.

When Ms. Erickson first suspected in 2007 that her compensation plan was less favorable than men with the same job despite being told all managing directors had the same employment agreement, she sought assistance from management and human resources. All that DBSI had to do was look at other managing directors in Private Wealth Management and see whether they were compensated along the same lines as Ms. Erickson was promised she would be paid. Instead, DMSI led Ms. Erickson into a morass that DBSI called an "investigation."

Rather than review the documents and information that, at all times, have been <u>exclusively</u> available to Defendant, DBSI sent Ms. Erickson on a wild goose chase in which DBSI repeatedly asked <u>her</u> to produce documents that support her claim as though it was unable to access and analyze such documents on its own. Moreover, DBSI also engaged in what can

best be described as a "shell game," in which it would regularly change its explanations for the compensation that was paid to Ms. Erickson (hence the inability of DBSI's counsel to even identify comparable managing directors some three years into the investigation).

In other words, DBSI could have easily resolved these issues years ago but instead actively made it impossible for Ms. Erickson to get to the heart of the matter. As late as July 16, 2010, counsel for DBSI told Ms. Erickson's counsel that DBSI did not know which employees were comparable to Ms. Erickson. Shockingly, DBSI could not provide a single name and its counsel explained that DBSI was still, three years later, trying to determine this issue. Then, during a hearing in the FINRA arbitration, counsel identified, for the first time, individuals that could be considered comparable to Ms. Erickson, but it is a list of cherry-picked comparators, not a complete list of DBSI directors who, like Ms. Erickson, primarily do institutional fixed income work. To be clear, Plaintiff does not seek information about a massive number of people. Upon information and belief, there are less than 30 employees at DBSI who do comparable work and work under contractual terms purportedly identical to Ms. Erickson.

Because DBSI has been so recalcitrant in cooperating with the internal claims as well as discovery in this matter (DBSI has objected to virtually every request), Ms. Erickson is seeking assistance from this Court through this Motion to Compel. Because the compensation issues appear to be somewhat complex and in an effort to move this case along expeditiously, Ms. Erickson is limiting her motion as to certain documents at this point. Upon review of documents produced in this matter, Ms. Erickson may move to compel Defendant to produce additional documents, and by limiting the Motion at this time does not waive her right to do so.

### III. PLAINTIFF'S DISCOVERY REQUESTS ARE REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSABLE EVIDENCE

When it comes to discovery in discrimination cases, federal courts agree that the plaintiff must be allowed to discover information that will assist him or her in establishing the alleged discrimination; this will require going beyond the specifics of the plaintiff's claim. *See Lyoch v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 62, 65 (E.D. Mo. 1995) It is not a sufficient objection that information sought through discovery would not be admissible at trial; what matters is that it is reasonably calculated to lead to the discovery of admissible evidence. *See*, *e.g.*, *Sykes v. Target Stores,* No. 00 C 5112, 2002 WL 554505, at *1 (N.D. Ill. April 15, 2002) (citing Fed. R. Civ. P. 26(b)(1)).

Ms. Erickson's discovery requests are narrowly tailored. Some of the requests are so basic that even Defendant agrees that it will produce the documents. However, rather than produce the documents, on the day this Motion was filed, two days after receiving a draft of this Motion, Defendant's counsel raised the issue of a protective order. The last time Defendant used the lack of a protective order as an excuse not to produce documents was nearly two months ago on August 23, 2010. During a Rule 37.2 conference, Defendant's counsel claimed he needed a protective order and within an hour, Plaintiff's counsel sent counsel for Defendant a copy of a protective order that had been presented to this Court in another matter (and which was entered by this Court three days later) but received no response. (Electronic mail dated August 23, 2010, attached hereto as Exhibit E.)

And even now, when Defendant raises the issue again after ignoring it for two months, all Defendant's counsel did was send over a copy of the protective order the parties agreed to a separate FINRA matter, an order that is both based on different claims and negotiated between the parties on circumstances different than those present in the instant case, and therefore not an

4

appropriate order. The Federal Rules of Civil Procedure set clear guidelines for how long discovery should take. There is no "protective order" exemption and the lack of one should not be allowed to further delay this case.

Beyond its refusal to produce documents due to the absence of a protective order, Defendant also seeks to narrowly limit the people to whom Ms. Erickson is compared to a pool of people much smaller than is appropriate. As was explained in detail above, Ms. Erickson was promised that she was going to be compensated in standard employment terms according to company-wide policies. In order to prove her claims, it is imperative that she be allowed to compare her treatment to all employees who are purportedly paid pursuant to those policies and not the handful the Defendant has cherry-picked. To be sure, Ms. Erickson is not requesting information about a massive number of comparators. She merely wants to see how she was treated as compared to other DBSI employees who do substantially similar work. Specifically, that means people who work with institutional clients on fixed-income investments. Upon information and belief, there are less than thirty such comparable employees.

Moreover, the eight employees that Defendant already acknowledges are comparable to Ms. Erickson are spread throughout the country. That makes sense as there are no geographic limitations in terms of the contract and policies that Ms. Erickson agreed to when she was hired; they are company-wide policies. Inexplicably, in some of its responses to Plaintiff's discovery requests, despite already admitting that comparators across the country are relevant, Defendant indicates that it will limit responses to people who are employed in the Chicago office.

When considering requests for information such as personnel files, courts weigh whether the information sought relates to employees that are "similarly situated." *See Sykes,* 2002 WL 554505, at *3 (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)).

5

The specific factors used to determine which employees are similarly situated depend on the context of the case. *See id.* (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). This information has been held to include personnel files. *See id.* at *3; *see also Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir. 1980). As set forth above, Ms. Erickson's employment agreement was represented as being Defendant's standard agreement, and referenced various company-wide policies. The other employees who have worked under the same agreement and under the same company-wide policies are all very relevant to Ms. Erickson's claims.

## IV. DISCOVERY SOUGHT

### A. Information Relating to the Infrastructure Allowing for Transacting Fixed Income Business

As part of her negotiations with DBSI, Ms. Erickson was told that she would be paid a commission on her institutional fixed income business. This was, after all, the bulk of her book of business. After arriving at DBSI, Ms. Erickson was told that Private Wealth Management did not have a selling agreement in place to enable her to be paid for such business. Of course, the obvious effect was that Ms. Erickson has been paid a minimal amount of compensation at DBSI despite her significant contributions. **Document Request No. 3** seeks production of selling and service agreements, joint ventures, revenue sharing agreements, brokerage agreements, and clearing agreements that are necessary in order to conduct fixed-income business. Thus, Ms. Erickson is seeking the very documents that go to the heart of whether the reason she was given for not being paid commissions on the majority of her business is truthful. Rather than produce these documents, DBSI makes a litany of objections, including that the request calls for information not relevant to Ms. Erickson's claims. Document Request No. 3 is a reasonable

6

request and Ms. Erickson needs these documents to effectively prosecute her claim against DBSI.

In a related request, Ms. Erickson asked for all communications between herself and DBSI regarding selling agreements. **(Document Request No. 19.)** While DBSI agreed to produce such communications, to date not a single document has been produced. Ms. Erickson notes that Defendant's agreement to produce was contingent upon the "entry of an appropriate confidentiality order." However, as was explained above (*see* Section III, *supra*), there is not a protective order in place because Defendant delayed working on it for two months. There is no justification for now rewarding that delay.

**B.     Client Advisor Profile Forms**

The Client Advisor Profile Forms provide information concerning the types of clients an advisor handles (*e.g.*, fixed income vs. equity). They also provide other information about client profiles. Inasmuch as this Court will be addressing issues concerning which client advisors are like Ms. Erickson so that their information can be used for comparative purposes (to support Ms. Erickson's claims that she was treated differently), Ms. Erickson has requested the Client Advisor Profile Forms for individuals hired to do institutional business, the type of business that reflects the bulk of Ms. Erickson's clients (Compl. ¶¶ 5, 27, 51). **(Document Request No. 5.)** She has limited her request just to those individuals hired during the time she has been employed with DBSI, which should involve a relatively small number of people. Defendant agreed to produce certain Client Advisor Profile Forms, but has attempted to limit that production further to a category of individuals that is too restrictive (those covering "non-discretionary accounts" and within Ms. Erickson's branch location). As noted, Ms. Erickson's employment is subject to various company-wide policies of Defendant, not policies applicable only to her branch location.

7

Ms. Erickson has already limited her request to individuals who conduct institutional business, and that were hired during her tenure with Defendant. Not only is Defendant's promised production too limited, but Defendant has yet to produce a single document, apparently due to its requirement that a confidentiality order first be in place (*see* Section III, *supra*).

      C.      **Documents Concerning Production Thresholds for Eligibility in Deferred Compensation Plans**

At the time of her hire, Ms. Erickson was told that she would be permitted to participate in DBSI's deferred compensation plan. However, when she applied 30 days later, DBSI denied her the opportunity based on its "subjective determination" that she would not maintain her eligibility. Ms. Erickson has requested documentation concerning the thresholds for participation in deferred compensation plans at DBSI. **(Document Request No. 6.)** Although Defendant appears to have agreed to produce some documents (the "plan documentation" governing its "Private Client Services Wealth Creation & Retention Program"), Ms. Erickson wants to ensure that the scope of the response includes all documents that address the threshold for participation in that plan, which of course would include any documentation in which exceptions to the threshold are addressed. She also wants to ensure that the "Private Client Services Wealth Creation & Retention Program" is the sole available deferred compensation plan. Despite Defendant's agreement to produce certain "plan documentation," even that limited information has yet to be produced by Defendant, again purportedly due to its requirement that a confidentiality order first be in place (*see* Section III, *supra*).

Ms. Erickson also asked for the names of managing directors since 2007 who were offered the opportunity to participate in the deferred compensation plan and for information regarding the terms of the plan. **(Interrogatory No. 4.)** Defendant refused to provide *any* information.

**D.     Monthly Commission Summaries for Private Wealth Management Representatives Covering Institutional Accounts**

Ms. Erickson requested monthly commission information for managing directors handling institutional clients (as she does) for the period of Ms. Erickson's employment. **(Document Request No. 7.)** DBSI again limited its response to those covering "non-discretionary" accounts and then solely to her office. There is simply no justification for limiting the response to these types of accounts or to just one office. According to the terms of her employment agreement, Ms. Erickson's employment was subject to certain company-wide policies. Certainly DBSI can make the argument that different offices have different compensation plans, but that seems unlikely given what was represented to Ms. Erickson at the time she was hired and given what DBSI has disclosed, including identifying a number of comparators who are not in Ms. Erickson's office. Regardless, Ms. Erickson must be permitted to review these documents to refute such arguments. For example, if everybody in all offices received the same compensation that Ms. Erickson said she was promised and Ms. Erickson was the only one who did not, we would expect that evidence to carry quite a bit of weight with the Court in determining who is telling the truth. Given that, after a three-year investigation of Ms. Erickson's claims, DBSI could not say who was comparable to Ms. Erickson, it would only be reasonable to remove such decision-making from DBSI's hands.

**E.     Compensation Documents**

As one of the issues in this case is whether Ms. Erickson was being compensated in a manner comparable with her male colleagues, she has requested the terms of compensation of each of her fellow managing directors **(Interrogatory No. 3** and **Document Request No. 11)**, as well as a description of total compensation for each managing director during the years 2007-2009 **(Interrogatory No. 6)**, and the identification of managing directors earning less than Ms.

9

Erickson during the years 2007-present **(Interrogatory No. 8)**. Because compensation may be based on revenue generation, Ms. Erickson also seeks the identification of those managing directors who generated less total revenue for DBSI than she did during the years 2007-2009. **(Interrogatory No. 9.)** She has also requested a description of the cash incentive programs currently in place for managing directors. **(Interrogatory No. 7.)** Defendant has refused to respond to any of these requests, despite their reasonable limitation and obvious bearing on the issues in this matter.

In terms of document requests, Ms. Erickson has requested documents concerning compensation plans **(Document Request No. 2)**, compensation guidelines provided to employees during Ms. Erickson's employment and at the time of her hiring **(Document Request No. 8)**, and equity plans **(Document Request No. 9)**. Ms. Erickson has also requested documentation concerning studies or comparisons related to DBSI compensation from 2005 to the present. **(Document Request No. 4.)** DBSI rejected Document Request Nos. 2 and 4 outright, and although it agreed to produce *some* documentation in response to Request Nos. 8 and 9, subject to the entry of a confidentiality order, it did not confirm that it would produce all responsive documentation, nor has it produced a single document to date (*see* Section III, *supra*).

Ms. Erickson also asked for information regarding the production of managing directors hired in 2007 **(Document Request No. 14)**, the personnel files for other managing directors **(Document Request No. 1)**, as well as monthly summary reports reflecting a breakdown of products and transaction volume for all managing directors from 2007 to the present **(Document Request No. 13)**. Defendant rejected Document Request Nos. 1 and 14, while agreeing to produce certain documents responsive to Request No. 13, using the flawed "non-discretionary account" and "same office" limitations.

Ms. Erickson's requests regarding compensation issues also include a description of the factors, performance ratings, and circumstances taken into consideration by DBSI for both internal mobility and monetary awards during Ms. Erickson's tenure (**Interrogatory No. 10**), as well as documents concerning rankings among her peers regarding revenue generated and number of new accounts opened (**Document Request No. 18**). DBSI refused to respond to either of these requests.

Finally, Ms. Erickson requested documents concerning "no solicitation lists" in place for managing directors from 2007 to the present (**Document Request No. 20**), which would demonstrate whether Ms. Erickson's clients were protected from solicitation by other DBSI agents, and how Ms. Erickson's clients were handled as compared to the clients of other DBSI managing directors. In a related request, Ms. Erickson sought documents reflecting communications between DBSI and managing directors concerning how to increase their client bases. (**Document Request No. 21.**) DBSI rejected both requests.

### F. Information Relating to Staff Salary Deductions

Ms. Erickson believes that she is the only managing director to have their assistant's salary deducted from their guaranteed salary. She asked for information on this issue (**Interrogatory No. 5**) and DBSI objected. Like so many other of Ms. Erickson's discovery requests, if this evidence shows that no managing director had their assistant's salary deducted, it would confirm Ms. Erickson's account of what has transpired here: that DBSI promised her compensation that was in line with other managing directors and then pulled a bait-and-switch, actually paying her substantially less, and otherwise strayed from the norm in how it handled the terms of her employment.

### G. Documents Relating to the Distribution of Accounts

Ms. Erickson has alleged that, following the departure of another managing director, Kevin Lynch, Mr. Lynch's accounts were distributed to male DBSI personnel. However, despite Ms. Erickson's concentration on institutional clients, none of Mr. Lynch's institutional accounts were distributed to Ms. Erickson. Ms. Erickson seeks to understand why Mr. Lynch's accounts were distributed in the manner that they were. **(Document Request No. 12.)** In a related request, Ms. Erickson seeks documents concerning the total revenue and payments to Kevin Lynch and other representatives overseeing institutional accounts with DB Alex. Brown LLC accounts registered to representative or broker numbers for 2007 to the present. **(Document Request No. 10.)** While Defendant agreed to produce some documents in response to these requests, subject to the entry of a confidentiality order, it again limited its response to the erroneous categories of "non-discretionary accounts" and the same office as Ms. Erickson. Also, despite these flawed limitations, DBSI has failed to produce any responsive documents (*see* Section III, *supra*).

### H. Documents Related to Other Legal Action

Ms. Erickson has requested information regarding other legal action taken within the last five years with respect to any DBSI employee's claim of potential gender discrimination and/or violation of the Equal Pay Act. **(Interrogatory No. 2.)** Such information goes to a pattern of behavior on the part of Defendant. When considering requests for information regarding other complaints of discrimination, courts have held that evidence of a pattern of discriminatory behavior is relevant to an individual claim of discrimination. *See*, *e.g.*, *Lyoch*, 164 F.R.D. at 70. Ms. Erickson's request is limited both in scope and in duration, yet Defendant has refused to respond on such grounds as vagueness, ambiguity, and not reasonably calculated to lead to the

discovery of admissible evidence. These objections are frivolous; Plaintiff's request is more than reasonable, and seeks basic information in a lawsuit involving claims of discrimination. Similarly, Ms. Erickson has requested documents concerning communications from other managing directors and client advisors expressing compensation concerns. **(Document Request No. 17.)** DBSI has also refused to produce any responsive documents to Request No. 17, listing the same frivolous objections.

WHEREFORE, for the foregoing reasons, Ms. Erickson respectfully requests that this Court (1) order Defendant to comply with all aforementioned discovery requests in full; (2) award attorneys' fees for the instant motion; and (3) award any further relief which this Court deems just and appropriate.

Respectfully submitted,

**PATRICIA ERICKSON**

/s/ Ruth I. Major

One of Her Attorneys

**Dated**: October 19, 2010

Ruth I. Major (ARDC No. 6205049)
Laura M. Rawski (ARDC No. 6300636)
The Law Offices of Ruth I. Major, PC
225 West Washington Street, Suite 2200
Chicago, IL 60606
Tel: (312) 893-7544
Fax: (312) 698-9867
rmajor@major-law.com
lrawski@major-law.com