**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA RUTH ERICKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 10 CV 965** |
| **v.** | ) | |
| | ) | **Hon. Ronald A. Guzman** |
| **DEUTSCHE BANK SECURITIES INC.,** | ) | |
| | ) | **Magistrate Judge Arlander Keys** |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION FOR RULE TO SHOW CAUSE WHY DEFENDANT SHOULD
NOT BE HELD IN CONTEMPT OF COURT**

Plaintiff, Patricia Ruth Erickson, by and through her attorneys, in support of Plaintiff's Motion for Rule to Show Cause Why Defendant Should Not Be Held in Contempt of Court pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vii), states as follows:

## I. INTRODUCTION

Defendant, through counsel, has made numerous misrepresentations to the judges overseeing this matter on material issues of fact. In October 2010, in an effort to prevent Ms. Erickson from getting evidence, it was represented to Judge Guzman that all selling agreements (2 in number) had been produced. Two months later, on the eve of depositions in New York, 17 more selling agreements were produced. In December 2011, it was represented that documents were locked and the passwords lost, but when Judge Guzman ordered an affidavit produced to support this assertion, the passwords were located within 24 hours. In October 2010, it was represented to Judge Guzman that only the selling agreement pertained to Defendant's internal payment scheme, but in the deposition of Defendant's 30(b)(6) witness Kevin Bannerton it was disclosed that the internal payout scheme for Client Advisors is also based on the terms of agreements that Deutsche Bank has with third party intermediaries ("portals"), and that these

documents would need to be reviewed to determine whether a payout for certain mutual funds was due. In October of 2010, it was represented to Judge Guzman that Defendant had produced documents in this action, when the documents produced thus far were all produced in connection with the FINRA matter and were all labeled by Defendant as exclusively for the FINRA matter.

Plaintiff has brought these misrepresentations to this Court's attention as they have arisen. The misstatements were not innocent misunderstandings. They were designed to affect the rulings of the court to avoid the production of evidence in this case to the prejudice of Ms. Erickson. This same conduct has again occurred before this Court. On February 9, 2011, it was represented—repeatedly, adamantly, and with utmost confidence—that the NSTARS reports contain the same information as the Bloomberg reports, the DB Treasury reports, and the Pershing reports. Ms. Erickson sought production of those documents to prove liability and damages. This Court relied on those representations by counsel in denying Ms. Erickson's second motion to compel, but ordered Defendant to produce an affidavit confirming that the same information was contained in the reports.

Rather than comply, Defendant produced an affidavit that finally admitted that the Bloomberg report has far more information than was included in the NSTARS report, and completely failed to address the remaining reports on this issue. Rather, Defendant skirted the issue and addressed everything but the primary issue before the Court. By disobeying this Court's orders issued on February 9, 2011, Deutsche Bank has gone beyond disrespecting only Ms. Erickson with its recalcitrance and is now openly defying a federal magistrate judge. As such, Plaintiff respectfully requests this Court to grant her Motion for a Rule to Show Cause Why Defendant Should Not Be Held in Contempt, and grant her an award of attorney's fees for

time spent pursuing this matter, as well as any other sanctions the Court deems appropriate, up to and including requiring Defendant to produce the reports and charts that are subject to the Order.

## II. STATEMENT OF FACTS

On February 9, 2011, the parties to this case appeared before this Court on Plaintiff's Second Motion to Compel. (Docket #41). During this hearing, Defendant Deutsche Bank, through its counsel, Mr. Nicholas DeBaun, made specific representations as to the availability and nature of various reports relevant to determining the calculation of Ms. Erickson's compensation in comparison with other similarly situated individuals. (A true and correct copy of the transcript of the oral arguments of February 9, 2011 is attached hereto as Exhibit A.) Namely, Ms. Erickson's attorney requested Pershing, Bloomberg, Client First, and DB Treasury reports, as well as Human Resources flow charts, which Plaintiff reasonably believes will contain compensation information, but counsel for Deutsche Bank continuously claimed the information in those reports was already in the NSTARS reports previously produced and were otherwise irrelevant to Ms. Erickson's claim. In lieu of requiring Deutsche Bank to produce said reports, this Court ordered Deutsche Bank to submit a Declaration to Ms. Erickson reflecting its counsel's contentions during oral argument. (Docket #56). At the hearing, Judge Keys made clear that the parties should look to the Order in light of his instructions given during the hearing and reflected in the transcript. (Ex. A at 55:20-56:1). Deutsche Bank has failed to follow this simple instruction; this motion for sanctions now follows.

## III. LEGAL STANDARD

When a party fails to obey a discovery order, the court overseeing the pending action may sanction the disobeying party for its conduct, up to and including treating the failure to obey the discovery order as contempt. Fed. R. Civ. P. 37(b)(2)(A)(vii). The purpose of a civil contempt proceeding is to enforce a prior court order or compensate the non-contemptuous party for

3

damages or losses sustained as a result of the contemptuous party's non-compliance. *Commodity Futures Trading Commission v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981). Attorney's fees may be awarded in contempt proceedings at the court's discretion. *Id*. Furthermore, in order to be held in civil contempt, the party must have disobeyed an order "that sets forth in specific detail an unequivocal command from the court." *Tranzact Technologies, Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) (internal citations omitted).

Previously, this Court has recommended holding a party in contempt of court when its pattern of conduct equated to "[stringing] the plaintiff and this court along." *Wachovia Securities, LLC v. Nola, LLC*, No. 05 C 7213, 2008 WL 4866333, at *1 (N.D. Ill. June 5, 2008). In that case, the defendant "continuously mislead plaintiff and the Court into believing that [its 30(b)(6) witness] would be produced for his deposition, and that defendant never intended to have [that witness'] deposition taken." *Id.* at *1.  After fifteen months without producing the deponent, that party was found to be in contempt of court. *Id.* at *1-2.

Similarly, Deutsche Bank has spent the past year misrepresenting to Ms. Erickson, Judge Guzman, and now to this Court the nature, content, and availability of the vast majority of the documents sought relating to the basic issue of Ms. Erickson's compensation and that of her comparators. Parties are not free to treat orders of the court as if they were demand letters from opposing counsel. *Central States, Southeast and Southwest Areas Pension Fund v. Express Freight Lines, Inc.*, 718 F. Supp. 716, 718-719 (N.D. Ill. 1989) (holding a party in civil contempt after failing to comply with an injunctive order).

## IV.  ARGUMENT

Deutsche Bank has violated an unequivocal Order of this Court and should be held in contempt. (A true and correct copy of the February 9, 2011 Order is attached hereto as Exhibit B.) Each topic in the Order to which Deutsche Bank failed to respond will be addressed below.

## **Bloomberg Reports**

The Bloomberg reports provide far greater detail than the NSTARS reports regarding the transactions that are also reflected on the NSTARS reports. The Bloomberg system is capable of providing substantial detail into each trade, which is necessary in order to compare Ms. Erickson's compensation to that of similarly situated male comparators. During the hearing, Mr. DeBaun attempted to persuade this Court to deny Ms. Erickson's motion to compel by representing that the NSTARS reports contained all the information that would be included in the Bloomberg Reports. Counsel for Ms. Erickson represented that this was untrue but nevertheless Plaintiff's motion was denied. Counsel for Plaintiff specifically cited to the CUSIP number as information not included in the NSTARS. (Ex. A at 41:4-9). This number assists in understanding detail concerning the security that is being bought or sold, and this was explained to the Court by Plaintiff's counsel. (Ex. A, at 22:18-19). It takes a generic description (as found in NSTARS) and by its number fills in important details. To support the ruling, this Court ordered Mr. DeBaun to provide Ms. Erickson's counsel with a Declaration confirming that there is not additional information in the Bloomberg reports. Mr. DeBaun's representations, this Court's ruling, and the Declaration subsequently submitted to Ms. Erickson's counsel are as follows:

- **Defendant's Representation:** "The Bloomberg – all of the information in the Bloomberg reports is in the NSTARS reports that we provided to the plaintiff." (Ex. A at 37:13-15). "[The Bloomberg] is the same information your Honor and the NSTARS reports run to thousands of pages—thousands of pages she already has with all of this information." In response to this Court's statement "Well I think for the purposes of this motion, though, if he—Mr. DeBaun, as part of a declaration, indicates that he has already supplied the NSTARS reports and that the Bloomberg reports that counsel has referred to during oral arguments here are included in the NSTARS reports—that

5

is what you are telling me, isn't it?" to which Mr. DeBaun responded "That is right, your Honor."

- ▪ **Court's Order:** During the hearing, Magistrate Judge Keys ordered Mr. DeBaun to submit a Declaration stating "We have produced to the plaintiff the NSTARS reports; that the NSTARS reports include the Bloomberg reports that counsel has referred to during oral argument." (Ex. A at 42:17-20). Further, Magistrate Judge Keys ordered Mr. DeBaun to "…include in the declaration that there are no other reports that would be more definitive…" (Ex. A at 43:13-15).

- ▪ **Deutsche Bank's Declaration:** "While the Bloomberg trade tickets may contain additional fields of information about a particular trade (*e.g.* the yield associated with the fixed income instrument, or a security identifier called a CUSIP number) that are not included in the NSTARS reports, the trades themselves are the same trades." (A true and correct copy of the Declaration of Josie Hall of 2/24/11 is attached as Exhibit C.)(Ex. C at ¶ 3).

The Declaration submitted by Deutsche Bank is in direct contradiction with Mr. DeBaun's representation to the Court. As Ms. Hall pointed out, the Bloomberg reports *are* capable of providing more detail than the NSTARS reports, including the important CUSIP number which was specifically referenced by Plaintiff's counsel at least three times during the hearing. In fact, the NSTARS reports show only fifteen columns of information, while the Bloomberg reports are capable of generating up to thirty columns in over 360 fields. (Pursuant to the protective order entered by this Court, a true and correct copy of a sample page from an NSTARS report is filed under seal as Exhibit D; the Bloomberg "TH<GO> Custom Trade History Reporting" manual is attached hereto as Exhibit E).  Indeed, the issue before this Court was not whether the "same trades" are in the NSTARS reports, but whether the Bloomberg reports will provide additional information concerning those trades, information that will assist the Plaintiff in understanding the liability and damages issues in this case.

Had Plaintiff's counsel not persisted in requesting a Declaration (as Judge Guzman had ordered with regard to the "lost" passwords for the locked documents), this Court and Ms. Erickson would not have confirmation that that the Bloomberg reports do in fact have additional relevant and necessary information that was <u>not</u> included in the NSTARS reports. This conduct of making one representation in Court, and then cleaning it up when it is required to be made under oath is unacceptable and sanctionable. The statements of an attorney to a court should be correct or should not be made, especially in such an unequivocal fashion.

Moreover, Deutsche Bank failed entirely to include in its Declarations a statement that there are no other definitive reports, despite this Court's Order to address the issue. Deutsche Bank's failure to state in its Declarations that there are no other definitive reports, coupled with the fact that Deutsche Bank failed to even mention by name any of the other reports addressed in the hearing, leads to a strong inference that Deutsche Bank did not represent that there are no definitive reports because the other reports requested *are* definitive. The Pershing reports in particular, discussed below, would show essentially the same detail provided in the Bloomberg reports and cover additional information. Deutsche Bank's utter failure to address the issue of reports relevant to Ms. Erickson's compensation and that of her male comparators, even after the court has ordered a statement on this very issue, is nothing short of sanctionable at this point in litigation.

### DB Treasury Reports

DB Treasury Reports track revenue internally on certain Deutsche Bank products, including regulatory collateral products and time deposits. Ms. Erickson needs the DB Treasury *reports*, rather than a statement about payment on DB Treasury *products*, because she regularly sells treasury products that produce revenue for Deutsche Bank but she receives no

compensation whatsoever for her contribution to the bottom line. This Court specifically ordered Defendant to provide a declaration confirming that the *information* in the DB Treasury reports is the same as the information in the NSTARS. The following is the Order and the evasive declaration:

> ▪ **Court's Order:** "In your declaration—about the DB Treasury reports have the same information as NSTARS. The NSTARS include the DB Treasury Reports." (Ex. A 47:13-17). The Court's written order required Defendant to provide a declaration consistent with what was stated in court, specifically including that the information in the NSTARS report is the same as the information included in the Bloomberg Reports, Pershing Reports, DB Treasury Reports and Client First Reports. (Ex. B).

> ▪ **Deutsche Bank's Declaration:** "To the extent PCS Client Advisors are paid in connection with client investments in Deutsche Bank Treasury products, such payments are reflected in the detailed commission reports (also called NSTARS reports) which are delivered to Client Advisors on a monthly basis." (A true and correct copy of the Declaration of Slava Shafir is attached hereto as Exhibit F.) (Ex. F at ¶ 3).

The question to which Ms. Erickson has repeatedly sought an answer is not whether payments are included in the NSTARS reports; rather, the question is how much income is being generated for Deutsche Bank, for what products, and for what clients. This information would be reflected in the DB Treasury reports. Thus, Defendant's statement is completely non-responsive to the Court's Order since it addresses only the issue of Client Advisor compensation for Treasury products and completely avoids answering the real question, and what was ordered, which is do the DB Treasury reports contain the *same information* as what is in the NSTARS.

## Client First Reports

Client First reports are derived from a major client-tracking revenue system. These reports include revenue by client for all three categories of business in which Ms. Erickson is involved: transactional products, asset management products, and depository products. These

reports will be especially helpful for comparing the revenue generated by her clients for all of

Deutsche Bank (as opposed to revenue generated for a particular division of Deutsche Bank)

with the amount she and her comparators are paid for generating that revenue. The following is

the Order and the non-responsive declaration:

- **Court's Order:** Although this Court did not order Deutsche Bank to produce the Client First reports during the hearing (Ex. A at 46:9), the written Order states, "In particular, she seeks Pershing reports, <u>client first reports</u>, DB Treasury reports, Blumberg reports and HR flow charts. Defendant states that the NSTAR reports, which it has submitted to Plaintiff, includes most of those reports and will submit a Declaration to Plaintiff in that regard by 2/24/2011." (Ex. B). The Court's written order required Defendant to provide a declaration consistent with what was stated in court, specifically including that the information in the NSTARS report is the same as the information included in the Bloomberg Reports, Pershing Reports, DB Treasury Reports and Client First Reports. (Ex. B).

- **Deutsche Bank's Declaration:** No mention of Client First reports.

Again, Deutsche Bank's Declaration does not comply with the Court's Order. Ms.

Erickson's counsel struggled to even find a statement in either Declaration produced on the 24th

that could be considered close to responsive. In fact, the phrase "Client First" does not appear

anywhere in either Declaration. The Court's Order clearly states that the Client First reports

should be addressed by the Declarations. Thus, clearly, Deutsche Bank has failed to comply.

## Pershing Reports

Pershing reports reflect the same types of information found on the NSTARS reports but,

like the Bloomberg reports, can provide the essential details that the NSTARS reports lack. This

information includes details about specific products being sold, CUSIPs (which are special

identification codes), revenue generated, and commissions paid. This information is critical to

properly compare Ms. Erickson's compensation to that of her comparators. Significantly, unlike

9

Bloomberg reports, Pershing reports can be generated by Client Advisor number. This is significant because Defendant now asserts the inability to generate Bloomberg reports by Client Advisor number as its principal objection to producing those reports.

Perhaps most importantly, the Pershing reports could shed light on a particularly puzzling aspect of Ms. Erickson's compensation: why her trades are booked "back-to-back" as opposed to her male comparators who seem to directly book their trades. Basically, when Ms. Erickson books a trade, she enters the information into the system just like anybody else, but then the information is re-entered for every trade. This is potentially resulting in other Client Advisors earning commissions for trades actually booked by Ms. Erickson. Since the Pershing reports are capable of being run by Client Advisor, they would be especially helpful for determining whether other Client Advisors are receiving financial credit for Ms. Erickson's work. The following is this Court's Order and the non-responsive and evasive language in the declaration.

- **Court's Order:** In the Court's written Order, Deutsche Bank was ordered to provide a declaration as follows: "In particular, she seeks <u>Pershing reports</u>, client first reports, DB Treasury reports, Blumberg reports and HR flow charts. Defendant states that the NSTAR reports, which it has submitted to Plaintiff, includes most of those reports and will submit a Declaration to Plaintiff in that regard by 2/24/2011.". (Ex. B). The Court's written order required Defendant to provide a declaration consistent with what was stated in court, specifically including that the information in the NSTARS report is the same as the information included in the Bloomberg Reports, Pershing Reports, DB Treasury Reports and Client First Reports. (Ex. B).

- **Deutsche Bank's Declaration:** "No PCS Client Advisors are paid for transactions pursuant to which client funds are invested in asset management funds through overnight 'sweeps' or omnibus accounts." (Ex. F at ¶ 2).

Deutsche Bank's Declaration does not comply with This Court's order. Defendant was unequivocally ordered to provide a statement addressing the Pershing reports, and the Pershing

reports are not mentioned by name anywhere in either Declaration. When ordered to submit a sworn statement regarding the nature of the Pershing reports which are clearly relevant and for which Ms. Erickson has repeatedly asked, Deutsche Bank produced nothing.

### Human Resources Flow Charts

During depositions, Deutsche Bank's 30(b)(6) witness testified to the existence of HR flow charts that are used for determining compensation in the hiring process at Deutsche Bank. Only one chart has been produced thus far, but the deponent used the term "charts" in the plural, leading Ms. Erickson to believe in the existence of more than one of these charts. Mr. DeBaun's representations, Magistrate Judge Keys' ruling, and the Declaration subsequently submitted to Ms. Erickson's counsel are as follows:

- **Defendant's Representation:** During the hearing, Ms. Erickson's attorney said, "If Mr. DeBaun wants to represent that that is all there is and they have all been produced, obviously, it is all I can ask for." (Ex. A at 48:4-6). Mr. DeBaun responded, "I will make that representation your Honor." (Ex. A at 48:7-8).

- **Court's Order:** During the hearing, Judge Keys acknowledged Mr. DeBaun's agreement to make that representation in a Declaration. (Ex. A at 48:9). In the Judge's written Order, he included the flow charts as an issue to be addressed by Deutsche Bank's Declarations. (Ex. B).

- **Deutsche Bank's Declaration:** No representation.

Deutsche Bank's utter failure to even mention HR flow charts in either affidavit submitted on the 24th represents a clear disregard of the Court's Order. If they exist, these HR flow charts would be especially helpful for determining whether or not Ms. Erickson in fact got the "standard deal" as was represented to her when she joined Deutsche Bank, or if she was given a deal different from that of her male counterparts. The fact of the matter is that, whether

or not these charts exist, this Court clearly ordered Deutsche Bank to address them in its Declarations, and Deutsche Bank simply chose not to follow that simple instruction.

## V. CONCLUSION

Ms. Erickson has painstakingly and repeatedly tried to get Deutsche Bank to cooperate in discovery since the day she filed her lawsuit. To date, she has been forced to file two motions to compel the production of documents that she reasonably believes contain information relating to the very basic and essential issue of the calculation of her own compensation and that of similarly situated individuals. Although Deutsche Bank was given a reprieve by not being forced to produce these reports, it was still obligated by an Order of this Court to confirm in writing the NSTARS reports include all the information from the other reports and that all HR charts have been produced. Instead, Deutsche Bank chose to disregard this Court's Order and instead try to circumvent the real issues or outright avoid making any representation whatsoever. As such, Ms. Erickson believes Deutsche Bank's conduct should not be treated as anything but contemptuous of this Court's authority, and respectfully requests this Court to award her reasonable expenses, including attorney's fees, associated with her attempts to obtain Deutsche Bank's compliance in an amount of $16,261.20 (A true and correct copy of the itemization of fees incurred by Ms. Erickson is attached hereto as Exhibit 1 to the Affidavit of Ruth I. Major, attached as Exhibit G), as well as any other sanctions deemed necessary by this Court, including an adverse jury instruction concerning the materials which Defendant has failed to produce or to address adequately in the declarations.

12

Respectfully submitted,

**PATRICIA ERICKSON**

/s/ Ruth I. Major

_____

One of Her Attorneys

**Dated**:  March 22, 2011

Ruth I. Major (ARDC No. 6205049)
Laura M. Rawski (ARDC No. 6300636)
The Law Offices of Ruth I. Major, PC
225 West Washington Street, Suite 2200
Chicago, IL 60606
Tel: (312) 893-7544
Fax: (312) 698-9867
rmajor@major-law.com
lrawski@major-law.com

13