**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA RUTH ERICKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 10 CV 965** |
| **v.** | ) | |
| | ) | **Hon. Ronald A. Guzman** |
| **DEUTSCHE BANK SECURITIES INC.,** | ) | |
| | ) | **Magistrate Judge Arlander Keys** |
| **Defendant.** | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER OBJECTIONS TO
MAGISTRATE JUDGE'S RULING DENYING PLAINTIFF'S
<u>SECOND MOTION TO COMPEL DISCOVERY</u>**

Plaintiff, Patricia Ruth Erickson, by and through her attorneys, for her Reply in Support of her Objections to Magistrate Judge's Ruling Denying Plaintiff's Second Motion to Compel Discovery, states as follows:

## I.      INTRODUCTION

Subsequent to the initial filing of Plaintiff's Objections to Magistrate Judge's Ruling Denying Plaintiff's Second Motion to Compel Discovery, Magistrate Judge Keys revisited several of the issues raised in the motion and has, as a result, granted several of the requests that were at issue. At this point, the only issues to be addressed by this Court pursuant to this Motion are as follows:

- Whether the denial of Plaintiff's request for the Agreements Between Deutsche Bank and Portals (Section III(A) of the motion) was an abuse of discretion;

- Whether the denial of Plaintiff's request for the Client First Reports (Section III(B) of the motion) was an abuse of discretion (other reports which would be

covered under this section, specifically the Bloomberg and Pershing reports, have recently been ordered produced); and

- Whether the denial of Plaintiff's request for an *in camera* inspection was an abuse of discretion (Section III(E) of the motion).

## II. ARGUMENT

### A. All Three Remaining Issues were Timely Raised with the Court

Defendant makes the argument that Plaintiff did not timely seek the information that is the subject of her motion presently before the Court, essentially resting on three general propositions: (1) the reports or agreements were not specifically requested (by name); (2) discovery requests were issued less than 30 days prior to the close of discovery; and (3) the request for an *in camera* inspection was not made until after discovery closed. Each of these arguments lacks merit.

First, as to the fact that the specific names of reports were not included in discovery requests, Ms. Erickson cannot be held accountable for knowing the myriad of reports Defendant generates and uses in its business operations. She is a financial advisor, not a back office administrator. She went to great lengths to describe the type of information she was seeking, but it was not her obligation to know the exact names of the documents. In fact, just the opposite is true. It was the duty of Defendant and its counsel to identify what documents would be responsive to Ms. Erickson's requests. Parties are required to engage in reasonable efforts to find documents requested in discovery. A party should not indicate that production is complete unless it has conducted due diligence and can say with reasonable certainty that all responsive documents have been produced. When an attorney certifies that a discovery response is complete by signature, he or she is certifying that the response is complete "to the best of the person's

knowledge, information and believe formed after a reasonable inquiry." Fed.R.Civ.P. 26(g)(1).

When certification is improperly provided without substantial justification, an appropriate

sanction shall be imposed, including attorney fees caused by the violation. Fed.R.Civ.P. 26(g)(3).

In this case, prior to the instant motion to compel, the parties went back and forth

regarding discovery. Plaintiff's counsel drafted numerous letters and participated in numerous

discovery conferences. Plaintiff has made very clear that she is seeking documents that will

provide the information needed to determine the revenue generated off the products she and her

35 identified counterparts sells and documents which shows the details of those products and

trades. As this Court recognized, it is difficult for a plaintiff to know where the evidence is

found in a corporation or what it looks like. The best a Plaintiff can do is describe the type of

information that is sought, which Plaintiff has done, and then rely on the Defendant and its

counsel to engage in good faith in investigations to identify responsive documents. When a

defendant and its attorney do not engage in good faith investigations, such as in this case where,

when affidavits are required the Defendant repeatedly backtracks on prior representations, the

result is that individuals like Ms. Erickson are forced to go to trial without substantial amounts of

evidence which were properly requested.

Since this motion was filed, yet another very clear example of the failure of Defendant to

act in good faith in discovery has come to light involving the Bloomberg reports. The

Bloomberg reports, which have now been produced after much time and expense by Plaintiff,

provide far greater detail than the NSTARS reports, which were produced earlier, regarding the

transactions that are also reflected on the NSTARS reports. The Bloomberg system is capable of

providing substantial detail into each trade, which is necessary in order to compare Ms.

Erickson's compensation to that of similarly situated male comparators. During the hearing

before Magistrate Judge Keys, when Plaintiff was seeking production of the Bloomberg reports, Mr. DeBaun attempted to persuade Magistrate Judge Keys to deny Ms. Erickson's motion to compel by representing that the already produced NSTARS reports contained all the information that would be included in the Bloomberg Reports. Counsel for Ms. Erickson represented that this was untrue but nevertheless Plaintiff's motion was denied. Counsel for Plaintiff specifically cited to the CUSIP number as an example of information not included in the NSTARS. (Ex. A to Plaintiff's Motion for Rule to Show Cause Why Defendant Should Not Be Held in Contempt of Court (Docket No. 70) at 41:4-9). This number assists in understanding detail concerning the security that is being bought or sold, and this was explained to Magistrate Judge Keys by Plaintiff's counsel. (Ex. A to Plaintiff's Motion for Rule to Show Cause Why Defendant Should Not Be Held in Contempt of Court (Docket No. 70) at 22:18-19). It takes a generic description (as found in NSTARS) and by its number fills in important details. To support Magistrate Judge Keys' denial of the request for the Bloomberg reports he ordered Mr. DeBaun to provide Ms. Erickson's counsel with a Declaration confirming that there is no additional information in the Bloomberg reports. However, when an affidavit was required, Deutsche Bank backtracked on the claims which had previously been made and then admitted under oath that the Bloomberg reports do in fact contain additional information not found in the NSTARS, including the CUSIP numbers which Plaintiff had been seeking. Mr. DeBaun's representations, Magistrate Judge Keys' ruling, and the Declaration subsequently submitted to Ms. Erickson's counsel are as follows:

- **Defendant's Representation:** "The Bloomberg – all of the information in the Bloomberg reports is in the NSTARS reports that we provided to the plaintiff." (Ex. A to Plaintiff's Motion for Rule to Show Cause Why Defendant Should Not Be Held in Contempt of Court (Docket No. 70) at 37:13-15). "[The Bloomberg] is the same information your Honor and the NSTARS reports run to thousands of pages—thousands of pages she

already has with all of this information." In response to this Court's statement "Well I think for the purposes of this motion, though, if he—Mr. DeBaun, as part of a declaration, indicates that he has already supplied the NSTARS reports and that the Bloomberg reports that counsel has referred to during oral arguments here are included in the NSTARS reports—that is what you are telling me, isn't it?" to which Mr. DeBaun responded "That is right, your Honor."

▪ **Court's Order:** During the hearing, Magistrate Judge Keys ordered Mr. DeBaun to submit a Declaration stating "We have produced to the plaintiff the NSTARS reports; that the NSTARS reports include the Bloomberg reports that counsel has referred to during oral argument." (Ex. A at 42:17-20). Further, Magistrate Judge Keys ordered Mr. DeBaun to "…include in the declaration that there are no other reports that would be more definitive…" (Ex. A to Plaintiff's Motion for Rule to Show Cause Why Defendant Should Not Be Held in Contempt of Court (Docket No. 70) at 43:13-15).

▪ **Deutsche Bank's Declaration:** "While the Bloomberg trade tickets may contain additional fields of information about a particular trade (*e.g.* the yield associated with the fixed income instrument, or a security identifier called a CUSIP number) that are not included in the NSTARS reports, the trades themselves are the same trades." (A true and correct copy of the Declaration of Josie Hall of 2/24/11 is attached as Exhibit C to Plaintiff's Motion for Rule to Show Cause Why Defendant Should Not Be Held in Contempt of Court (Docket No. 70).)(Ex. C at ¶ 3).

The Declaration (signed by Ms. Hall) submitted by Deutsche Bank is in direct contradiction with Mr. DeBaun's representation to Magistrate Judge Keys. As Ms. Hall pointed out in her affidavit, the Bloomberg reports *are* capable of providing more detail than the NSTARS reports, including the important CUSIP number which was specifically referenced by Plaintiff's counsel at least three times during the hearing. In fact, the NSTARS reports show only fifteen columns of information, while the Bloomberg reports are capable of generating up to thirty columns in over 360 fields. (Pursuant to the protective order entered by this Court, a true and correct copy of a sample page from an NSTARS report is filed under seal as Exhibit D to Plaintiff's Motion for Rule to Show Cause Why Defendant Should Not Be Held in Contempt of

Court (Docket No. 70); the Bloomberg "TH<GO> Custom Trade History Reporting" manual was also attached thereto as Exhibit E, Docket Entry No. 70). Indeed, the issue before Magistrate Judge Keys was not whether the "same trades" are in the NSTARS reports, but whether the Bloomberg reports will provide additional information concerning those trades, information that will assist the Plaintiff in understanding the liability and damages issues in this case.

Had Plaintiff's counsel not persisted in requesting a Declaration (as this Court had ordered with regard to the "lost" passwords for the locked documents), Magistrate Judge Keys and Ms. Erickson would not have confirmation that that the Bloomberg reports do in fact have additional relevant and necessary information that was <u>not</u> included in the NSTARS reports. This conduct of making one representation in Court, and then cleaning it up when it is required to be made under oath is unacceptable (and sanctionable.) The statements of an attorney to a court should be correct or should not be made, especially in such an unequivocal fashion, unless the attorney has carefully reviewed the matter. A party cannot state that production is complete while failing to check the report itself to determine whether the statements are true. Failure to check such obvious sources falls short of the requisite reasonable inquiry under Rule 26. *See, Wright v. Touhy,* 2003 WL 22439864 at *4 (N.D. Ill. Oct. 28, 2003) ("The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances.")

Plaintiff has made it clear through her requests and arguments before this Court, going back to the motion and hearing before this Court in October of 2010, that she is seeking the documents that explain the basis for her payouts from the Deutsche Bank. To the extent there were any limitations placed on what those documents would look like, the limitations were

suggested by Defendant and supported by Defendant's counsel's representations, many of which have turned out to be untrue. Defendant's argument now that failure to specifically identify a document by name in a document request makes the motion seeking production of a specific document now untimely has no merit. The focus should be on whether the document meets the criteria of the documents sought in the request, and the documents sought in this motion most assuredly do, as addressed in the initial motion.

Second, Defendant's attempt to focus this Court's attention on discovery requests that were issued within the 30 days leading up to the discovery deadline is improper. In the reply brief filed before Magistrate Judge Keys, and before Magistrate Judge Keys, Plaintiff explained that the reference to the subsequent discovery request was in error and that Plaintiff was not relying on those requests to support her position. Nevertheless, knowing that the requests were not referenced in the motion before this Court, and were specifically, in writing and orally, excluded from consideration by Plaintiff herself, Defendant throws in this argument to muddy the waters. There is no question that Plaintiff is not, and has not, relied on those discovery requests to support her motion before this Court.

Third, the request for an *in camera* inspection was made after Plaintiff's counsel became aware of a document that was represented to be privileged but in fact contained no material that would support withholding the document from production. The document was produced in redacted form during the discovery period, but after discovery closed was produced in unredacted form. Immediately upon seeing that the document did not contain material which would properly support withholding the information, Plaintiff filed a motion seeking an *in camera* inspection.

7

### B.     The Portal Agreements are Discoverable

Ms. Erickson has consistently sought documents that will assist in understanding how it is that she is not paid for certain products sold to her client while male counterparts are paid. Mr. DeBaun has represented that with regard to these issues, the "selling agreement" provide the information needed to determine why financial advisors are paid for products. During the deposition of Kevin Bannerton, he explained that the agreements that Deutsche Bank enters into with the portals also drive the determination of whether a financial advisor is paid (as more fully addressed in initial motion). A group of financial advisors led by male financial advisor in Atlanta is paid when its clients transact business through a portal. Ms. Erickson is not. One of the reasons given was that the terms of the portal agreement may be less favorable in Ms. Erickson's case. Ms. Erickson had no way of knowing that this was a factor until the deposition of Mr. Bannerton and then subsequently sought the information specifically from Defendant and then through the Court. Mr. DeBaun's representations that only the selling agreement impact Deutsche Bank's payout determinations is not accurate and of course Ms. Erickson should be entitled to see the portal agreements to determine whether it is true that the portal agreement pertaining to her client is less favorable than the terms of the other group. It is not a burden on Defendant because it consists of less than 10 agreements.

### C.     The Client First Documents are Discoverable

It was not until long after the close of discovery that Ms. Erickson heard from a colleague about Client First reports. They were not produced. They were not identified during depositions. Ms. Erickson has learned that they are reports that organize information by client, something that Ms. Erickson requested in her second discovery request, issued on November 15, 2010. (See Ex. Q to Plaintiff's Second Motion to Compel, Docket No. 41). Mr. DeBaun has

claimed he never heard of such reports and has never denied that they exist and would be responsive to Ms. Erickson's requests. (Ex. B, Plaintiff's Objections to Magistrate Judge's Ruling Denying Plaintiff's Second Motion to Compel Discovery, p. 46, lines 3-7). Magistrate Judge would not consider producing them, instead ruling, without explanations, "Well, you don't get that. Move on to something else." (Id., p. 46, lines 9-10). So, Mr. DeBaun claims to not know anything about these reports that would provide detail about Ms. Erickson's clients and the detail surrounding transactions and revenue by client, and regardless of whether they are responsive to document requests and regardless of whether they were not known to Defendant's counsel through his own failure to diligently pursue discovery in this case, Magistrate Judge Keys refused to require the production of the documents. The Client First reports will provide information about Ms. Erickson's clients and the clients of the other 35 financial advisors that would allow Ms. Erickson to compare her client's production, revenue, and other performance indicators to those of financial advisors who are making substantially more than her in order to support her claim of discrimination. They are computer generated reports. Defendant should produce the Client First reports.

### D. The Privilege Log Should Be Reviewed *In Camera* to Protect Plaintiff's Interests

Throughout this case, Defendant has represented that material does not exist, is duplicative or has been produced only to subsequently backtrack and then produce the relevant material. The hundreds of documents contained on the privilege log are no exception. Hundreds of the emails identified do not even reference an attorney. The titles show that they involve Ms. Erickson's clients (e.g., Chicago Public Schools) and many even specifically reference Ms. Erickson herself. At a minimum, Ms. Erickson requests that documents that are not sent to or from an attorney be reviewed by this Court.

### III. CONCLUSION

Wherefore, for the foregoing reasons, Ms. Erickson, plaintiff, respectfully requests that this Court enter an order requiring (1) Defendant to produce all agreements entered into between any Deutsche Bank entity and a portal that concerns Private Wealth Management clients; (2) Defendant to produce Client First reports for the clients of Ms. Erickson and the 35 client advisors that have been identified by Ms. Erickson; and (3) Defendant to produce all emails and documents identified in the privilege log it produced in this case for an *in camera* review, or in the alternative, all such documents that were not sent by or initially sent to an attorney.

Respectfully submitted,

**PATRICIA ERICKSON**

/s/ Ruth I. Major

_____

One of Her Attorneys

**Dated**:  April 8, 2011

Ruth I. Major (ARDC No. 6205049)
Laura M. Rawski (ARDC No. 6300636)
The Law Offices of Ruth I. Major, PC
225 West Washington Street, Suite 2200
Chicago, IL 60606
Tel: (312) 893-7544
Fax: (312) 698-9867
rmajor@major-law.com
lrawski@major-law.com