IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA RUTH ERICKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 10 CV 965 |
| v. | ) | |
| | ) | Hon. Ronald A. Guzman |
| **DEUTSCHE BANK SECURITIES INC.,** | ) | |
| | ) | Magistrate Judge Arlander Keys |
| **Defendant.** | ) | |

### PLAINTIFF'S THIRD MOTION TO COMPEL

Plaintiff, Patricia Ruth Erickson ("Plaintiff" or "Ms. Erickson"), through counsel, and pursuant to Federal Rule of Civil Procedure 37, moves to compel Defendant, Deutsche Bank Securities, Inc. ("Defendant" or "DBSI"), to respond to Plaintiff's discovery requests and this Court's October 26, 2010, December 9, 2010 and February 9, 2011 orders. In support thereof Plaintiff states as follows:

### I. COMPLIANCE WITH LOCAL RULE 37.2

For several months now Ms. Erickson has attempted to complete discovery in this matter by trying to get the final pieces of information she needs to effectively prosecute her case. The response of the Defendant Deutsche Bank has been to produce information, but never the full information that has been requested. Rather, Deutsche Bank prefers to produce information that circles around the requests of Ms. Erickson, and in some points touches on the requests, but never actually provide the full information requested.

Deutsche Bank's conduct is reminiscent of a child at the dinner table being asked to eat his vegetables. First, he tucks some in his pocket. He's asked again. He then sneaks some to the dog. He's asked again. He then hides the remainder under the table. With the vegetables absent from his plate, he looks his parents in the eyes and assures them he has complied. On a

superficial level, it appears the child has: the vegetables are gone and there was quite a bit of activity around the table involving the vegetables. Like the child, Deutsche Bank goes through the motions but never really does what has been asked of it. Its strategy is to produce documents and information, albeit not complete or fully responsive documents and information, and then hope that in time all involved will say that this has gone on long enough, that it appears to have complied, and drop the matter. It hopes that the Court and the Plaintiff, exhausted with efforts to secure compliance, will simply give up. Its tactics have included making misrepresentations (such as the Bloomberg reports contain the same information as the NSTARS) and trying to avoid production by repeatedly asking Plaintiff's counsel to restate what documents and information they are seeking despite the fact the information that is being requested has been identified repeatedly. The information that is requested here is important to Ms. Erickson's case, has been ordered to be produced by this Court, and certainly must exist.

## II. DOCUMENTS SOUGHT

### 1. Bloomberg Reports

The deficiency with regard to the Bloomberg reports is <u>first</u>, the information was not pulled from the Bloomberg system. Rather, it was extracted, then transferred to other software (excel spreadsheets) and then produced. In order to ensure that the information is accurate, Defendant had been ordered to produce reports from <u>Bloomberg</u>. After receiving the affidavit of Josie Hall, Plaintiff and the Court accommodated Defendant by substantially limiting the search in terms of the temporal scope. Now, even after receiving that accommodation, Defendant refuses to comply with the Court's Order and produces something other than the Bloomberg reports.

<u>Second</u>, the information provided <u>does not show revenues</u> associated with the trades. It only shows revenues that went to a single Deutsche Bank unit, which itself isn't even a legal entity. The revenue associated with the trades is important for several reasons. First, it will assist in putting Ms. Erickson's employment agreement in proper context. Ms. Erickson was not offered the same compensation package as numerous men who were expected to bring in the same or less in production (revenues) to the Bank. It will be important for the jury to understand what Ms. Erickson's production was prior to joining Deutsche Bank, what Deutsche Bank anticipated her production would be at Deutsche Bank, and what her production actually was. So far, the only information produced was the revenues that went to the single Private Client Services unit ("PCS"). It is important to note that Ms. Erickson's contract wasn't with PCS. Indeed, DBSI was the party that contracted with Ms. Erickson yet Deutsche Bank has not even provided revenue numbers for DBSI. They have refused.

Further, obtaining the revenue numbers is necessary to counter the opinions of Deutsche Bank's testifying expert. Deutsche Bank claims that Ms. Erickson was not paid the same as her counterparts for various reasons and its expert has specifically made a reference to the revenue contributions associated with her production. During the deposition of the Deutsche Bank expert witness, Dr. Malcolm Cohen, he testified that he had only been given information on revenues that went to PCS in connection with Ms. Erickson's production. Of course, that was the only information given to Ms. Erickson's expert too but that is only because Deutsche Bank continues to refuse to provide the information on revenues that have gone to the other Deutsche Bank units, including DBSI. Then, based on only the PCS revenue data, Dr. Cohen challenges Ms. Erickson's claim that she should have been paid a high signing bonus by stating that based on her contributions, if she had been given the same terms as her male comparators, PCS would

3

have "lost" money. This statement by Dr. Cohen goes to the heart of why the revenue data for any Deutsche Bank entity is necessary. The jury can only make sense of what is reasonable and credible in terms of Ms. Erickson's claims if they have a complete understanding of how her work contributed to the financial success of Deutsche Bank as a whole.

And while Deutsche Bank argues before this Court that only the dollars to PCS matter, in its own internal documents they represent that the Deutsche Bank units must work together and that the Bank doesn't perceive itself as separate units. Specifically, in the selling agreements concerning the global banking operations (the products and services that would be covered under the DB Treasury Reports), the Bank writes "Global Banking and Private Wealth Management is founded on the 'One Bank-One Team' philosophy. The working relationship between GB and PWM (each, a 'Division') is based on a spirit of co-operation, fostering teamwork, connectivity and cross selling with a shared goal to develop and grow the common business in a mutually beneficial manner." Similarly, the Bank writes in agreement concerning the global markets (the products and services that would be covered by the Bloomberg Reports) that the agreement is "founded on the 'One Bank-One Team' philosophy" and "based on a spirit of co-operation, fostering teamwork, connectivity and cross selling." It is only now, before this Court, that Deutsche Bank wants to treat each unit as separate and distinct from the others, even going to such lengths as to make the preposterous claim that a business unit of a legal entity should be viewed separate from the legal entity of which it is a part.

When Ms. Erickson's counsel has attempted to determine what information can be generated by these reports, Deutsche Bank has attempted to make it difficult for Ms. Erickson to get answers to her questions regarding the capabilities of the reporting systems. They have agreed to produce only one individual and that person works only for the PCS unit. They would

4

only agree to provide him for a one-half hour period. They have refused to provide anyone who can answer questions about the reports as they relate to the other Deutsche Bank units. On May 11, when Ms. Erickson's counsel requested that the call with the only person whom Deutsche Bank was willing to present be rescheduled so that she could have a technical person present on the phone, Deutsche Bank did not propose a new date even though asked repeatedly over a two week period to do so. See Exhibit A**,** attached hereto. Rather, they kept telling us we would get a date and then, instead of proposing dates, responded that they wanted to know whether the call would be useful (and that occurred on May 25, 2011).

On March 4, before this Court, the parties agreed that Defendant would provide information on 15-20 fields. Many of those fields were specifically agreed upon, including "profits", and fields showing how commissions are routed, distributed, or allocated. The attorneys for each side spent time, at Court, going down the list and checking off the fields that had been agreed to. A copy of the document that was reviewed is attached hereto as Exhibit B**.** Subsequently, counsel for Defendant claimed that they were unsure of the fields to be used and repeatedly asked for confirmation. For example, on May 13, 2011, counsel for Deutsche Bank represented that he was not familiar with the fields (despite the fact that they had been agreed upon some two months earlier) and requested another copy of the fields, which were promptly sent to him. See Exhibits C, D, and E attached hereto. Nevertheless, to date, Deutsche Bank, inexplicably, has not produced the revenue that has been generated by Ms. Erickson and the 35 comparables that has gone to DBSI or other Deutsche Bank entities. Only the dollars that have gone to one unit of a single Deutsche Bank entity have been produced.

<u>Accordingly</u>, Deutsche Bank should produce the revenues generated from Ms. Erickson and the other 35 comparables that went to any unit within the Deutsche Bank organization and

the reports should be run <u>from Bloomberg</u>, it should identify the entity to which the revenues went, the transactions associated with the revenues, and the client identity, or produce an affidavit specifically stating that Deutsche Bank and its related entities are unable to do so. In the event that the affidavit is provided, Deutsche Bank should provide any information that provides data on the general revenues generated by the products that were sold by Ms. Erickson and her comparators.

### 2. DB Treasury Reports

Like the Bloomberg reports, the reports that have been produced purportedly in response to this Court's order that the DB Treasury Reports be produced by Defendant do not provide information or contain information on the revenue that was generated from depository products or other banking products. The reports only provide the products and the rates that were charged to the clients. According to the Bank's selling agreement concerning the treasury products, "revenues" constitute the sums as may be derived from "fees, interest margins and mark-ups." Again, none of that information was provided. Ms. Erickson has been told that one of her clients generates sufficient revenue for the Bank and that there is a report that captures the revenue generated by client.

<u>Accordingly</u>, Deutsche Bank should produce the reports that show the revenues generated by client from the depository and other banking products for Ms. Erickson and the comparators.

### 3. Pershing Reports

No Pershing Reports have been produced. On May 13, 2011, an email was sent to counsel for Deutsche Bank, again specifying the information that was requested concerning the Pershing Reports. See Exhibit D, attached hereto. In that email counsel for Ms. Erickson also made clear that we are seeking to talk to someone who (1) knows the capabilities of the system

6

(as opposed to someone who is not well-versed on the system itself); and (2) knows what types of reports and information is available for all of the Deutsche Bank entities, not just PCS, which is one unit of one entity of Deutsche Bank. An initial conference call was set up with, as discussed above, one person who only knew PCS. This person was only going to be made available for one-half hour. When Ms. Erickson's counsel became aware on May 11, 2011 that she would not have a person with technical knowledge on her end available, she requested that the meeting be rescheduled. A new date was never provided as promised. On May 27, counsel for Plaintiff was asked whether it was still necessary. To date, no Pershing Reports have been produced.

Accordingly, Deutsche Bank should produce the Pershing Reports as ordered by this Court.

**WHEREFORE**, for the foregoing reasons, Ms. Erickson respectfully requests that this Court (1) order Defendant to comply in full with all aforementioned discovery requests and orders of this Court; (2) award attorneys' fees for the instant motion in light of Defendant's lack of due diligence and persistent refusal to conduct discovery in good faith; and (3) award any further relief which this Court deems just and appropriate.

Respectfully submitted,

**PATRICIA ERICKSON**

/s/ Ruth I. Major
_____
One of Her Attorneys

**Dated**: June 8, 2011

Ruth I. Major (ARDC No. 6205049)
Laura M. Rawski (ARDC No. 6300636)
The Law Offices of Ruth I. Major, PC

7

225 West Washington Street, Suite 2200
Chicago, IL 60606
Tel: (312) 893-7544
Fax: (312) 698-9867
rmajor@major-law.com
lrawski@major-law.com